UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| AMY L. EDMONDSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 1:16cv142 |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) as provided for in the Social Security Act. 42 U.S.C. §416(I). Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. Gotshaw v. Ribicoff, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); Garcia v. Califano, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. See Jeralds v. Richardson, 445 F.2d 36 (7th Cir. 1971); Kutchman v. Cohen, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." Garfield v. Schweiker, 732 F.2d 605, 607 (7th Cir. 1984) citing Whitney v. Schweiker, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rhoderick v. Heckler, 737 F.2d 714, 715 (7th Cir. 1984) quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); see Allen v. Weinberger, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." Garfield, supra at 607; see also Schnoll v. Harris, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act

through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since February 27, 2008, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: obesity, bi-polar disorder, post traumatic stress disorder status post childhood abuse, schizoaffective disorder, left knee issue, and degenerative disc disease (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except the claimant could only occasionally climb ladders, ropes, scaffolds, ramps or stairs, and could only occasionally balance, stoop, kneel, crouch and crawl. Additionally, the claimant must avoid concentrated exposure to moving machinery and exposure to unprotected heights. Moreover, the claimant is limited to simple, routine and repetitive work performed in a work environment free of fast-paced production requirements and only occasional interactions with coworkers, but could work around coworkers throughout the day without any tandem tasks. Additionally, work would need to be isolated from the general public with only occasional interactions with supervisors. Finally the claimant would need to sit or stand alternatively, but would not be off task more than 10% of the work period.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on August 2, 1983, and was 24 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563)

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual

> functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

> 11. The claimant has not been under a disability, as defined in the Social Security Act, from February 27, 2008, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 20-35).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

This case has a somewhat lengthy procedural history. In November 2010, Plaintiff applied for disability insurance benefits, alleging disability since February 2008 (Tr. 118, 189-95). The agency denied her claim initially and on reconsideration (Tr. 121-24, 129-35). On May 24, 2012, Plaintiff appeared with a non-attorney representative and testified at a hearing before an ALJ (Tr. 42-117). On July 20, 2012, the ALJ denied Plaintiff's application for disability benefits, finding she was not disabled during any of the period from her alleged onset date of February 27, 2008, through the date of the ALJ's decision (Tr. 15-41). On August 30, 2013, the Appeals Council denied Plaintiff's request for review (Tr. 1-4). On October 24, 2013, Plaintiff filed a complaint in this court, alleging that she was wrongfully denied disability insurance benefits (Tr. 834-845). On November 6, 2013, Plaintiff protectively filed another application for disability insurance benefits alleging disability since February 2008 (Tr. 866, 1038-39). The agency denied her claim initially and on reconsideration (Tr. 969-77, 979-985). On October 28, 2014, this court remanded the case to the Commissioner for further consideration of the frequency requirement for the sit/stand limitation and for further consideration of the limitations in the mental residual functional capacity (RFC) finding (Tr.

867-83). On August 4, 2015, the Appeals Council issued an order remanding Plaintiff's application to the ALJ consistent with this Court's order. (Tr. 884-87). The Appeals Council also ordered the ALJ to consolidate Plaintiff's subsequent application dated November 6, 2013 with the November 2010 application and issue a decision on the consolidated claims (Tr. 884-87).

On October 23, 2015, Plaintiff appeared with counsel and testified at a hearing before an ALJ (Tr. 662-727). A vocational expert (VE) also testified. On January 5, 2016, the ALJ denied Plaintiff's application for disability benefits, finding she was not disabled during any of the period from her alleged onset date of February 27, 2008, through December 31, 2013, the date she last met the insured status requirements of the Social Security Act (Tr. 634-61). The ALJ's decision became the final decision of the Commissioner. Plaintiff now seeks judicial review of the Commissioner's decision.

Plaintiff filed her opening brief on November 11, 2016. On January 12, 2017, the defendant filed a memorandum in support of the Commissioner's decision. Plaintiff has declined to file a reply. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled. See Singleton v. Bowen, 841 F.2d 710, 711 (7th Cir. 1988); Bowen v. Yuckert, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other

> work within the economy? An affirmative answer leads either to
> the next step or, on steps 3 and 5, to a finding that the claimant is
> disabled. A negative answer at any point, other than step 3, stops
> the inquiry and leads to a determination that the claimant is not
> disabled.

Nelson v. Bowen, 855 F.2d 503, 504 n.2 (7th Cir. 1988); Zalewski v. Heckler, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

Plaintiff recites the following medical history regarding her orthopaedic problems. On April 15, 2011, Plaintiff's primary care physician, Lisa N. Booth, M.D., documented left knee pain and noted that Plaintiff was ambulating with a cane. On April 18, 2011, x-rays revealed minimal patellofemoral degenerative change. On May 12, 2011, an MRI revealed a small Baker's cyst and joint effusion. On May 18, 2011, Dr. Booth referred her to an orthopaedic physician, Karl T. Wagner, M.D., for further evaluation. Dr. Wagner reviewed the MRI, found peripatellar tenderness, and diagnosed patellar chondromalacia. In response, Dr. Wagner prescribed pain medication (Ultram), an anti-inflammatory (Mobic), and physical therapy. Plaintiff pursued physical therapy for her left knee issues from May 25, 2011 to June 22, 2011. On September 12, 2011, Dr. Booth revised the medication regimen to Flexeril, Vicodin, and Mobic. On November 8, 2011, Dr. Booth renewed the diagnosed of left knee pain and noted that some days Plaintiff continued to have trouble ambulating. As a result, Dr. Booth maintained the Mobic prescription and referred her back to Dr. Wagner. In April 2012, her physician diagnosed plantar fascial fibromatosis which was still an active problem in 2015.

On May 22, 2009, Dr. Booth identified a keloid scar on Plaintiff's neck. On July 20, 2009, Dr. Booth noted that Plaintiff experienced neck pain and could not move her right arm. Dr.

Booth then diagnosed cervicalgia, took her off work, and prescribed Naprosyn, Flexeril, and Darvocet. On August 21, 2009, an MRI of the cervical spine showed mild posterior ligamentous hypertrophy at C5-C6 and C6-C7. On August 21, 2009, an MRI of the thoracic spine showed atypical hemangioma at T-1 or T-4, 28 and mild right posterior vertebral spurring at T-1 and T-2. On August 21, 2009, an MRI of the lumbar spine showed a broad-based central L4-L5 disk protrusion with mild bilateral facet arthropathy, and an L5-S1 bulge with mild left-sided foraminal stenosis and mild to moderate bilateral facet arthropathy. On August 28, 2009, Dr. Booth again diagnosed cervicalgia and back pain.

On January 13, 2011, the consultative examiner identified lumbar range of motion deficits in forward flexion and extension. On April 15, 2011, Dr. Booth renewed the diagnosis of cervicalgia and back pain, and prescribed Naprosyn and Flexeril. On August 22, 2011, Dr. Booth documented that Plaintiff's low back pain radiated into both thighs. Dr. Booth also elicited a positive straight leg raising test bilaterally and noted that pain limited Plaintiff's range of motion. Consequently, Dr. Booth ordered another lumbar MRI. On August 25, 2011, Plaintiff underwent a lumbar MRI that revealed L4-L5 broad-based central disk protrusion with mild disk space narrowing, a posterior tear of the annulus fibrosis, mild ventral impression of the thecal sac, and mild bilateral degenerative facet arthropathy; L5-S1 broad-based disk bulge with mild left foraminal stenosis, mild bilateral recess stenosis, and degenerative facet arthropathy. After evaluating the MRI, Dr. Booth referred Plaintiff to Robert M. Shugart, M.D., an orthopaedic surgeon. On September 9, 2011, Dr. Shugart examined Plaintiff, recommended conservative care, and set up an L4-L5 epidural injection. On September 12, 2011, Dr. Booth renewed the Flexeril, Vicodin, and Mobic prescriptions. On October 5, 2011, David S. Stensland, M.D., an orthopaedic

surgeon, diagnosed a lumbar herniated nucleus pulpolsus and administered an L4-L5 interlaminar epidural injection. On November 30, 2011, Dr. Stensland again diagnosed a lumbar herniated nucleus pulpolsus and administered another L4-L5 interlaminar epidural injection. Plaintiff then pursued physical therapy for her back issues from December 28, 2011 to March 5, 2012. The condition of her spine and her pain continued to be problematic throughout the period 2012 to 2015. EMG revealed chronic L5 radiculopathy and she required a cane.

The following facts relate to Plaintiff's morbid obesity. On March 10, 2005, a mental health therapist advised Plaintiff that Seroquel could cause weight gain. On June 29, 2011, her weight was 280lbs and her BMI was 41.34. On July 7, 2011, her weight was 281lbs. On August 22, 2011, Dr. Booth communicated to Plaintiff that weight loss would help with back and pain. On September 9, 2011, her height was 5'7" and her weight was 265lbs. From 2012 through 2015, physicians noted morbid obesity.

The following facts relate to Plaintiff's mental health. On June 2, 2004, Northeastern Center staff recorded bipolar disorder and acute stress disorder and assigned Plaintiff a Global Assessment of Functioning (GAF) score of 50. From March 10, 2005 to April 27, 2006, Plaintiff received mental health services from Saint Joseph County (Michigan) Community Mental Health Services. During this treatment period, Plaintiff's GAF scores ranged from 40 to 45. Her psychiatrist variously diagnosed her with post traumatic stress disorder (PTSD), binge eating disorder, major depressive disorder, and noted a history of alcohol abuse, history of sexual abuse, and history of attention deficit hyperactivity disorder (ADHD). The treatment regimen included medication management and outpatient therapy. Her psychiatrist variously prescribed Zonegram, Abilify, Seroquel, Paxil, and Lexapro.

On December 23, 2008, consultative examiner, Vijay G. Kamineni, M.D., noted generalized anxiety disorder, major depressive disorder. From December 29, 2010 to April 5, 2012, Plaintiff received mental health services from Northeastern Center. During this treatment period, Plaintiff's GAF scores ranged from 38 to 52. Her psychiatrist, Sylvia Rutten, M.D., variously diagnosed her with PTSD, schizoaffective disorder, and avoidant personality disorder. The treatment regimen included medication management, individual therapy, dialectical behavior therapy, group therapy, and individual ADL training in the home. Her psychiatrist prescribed Prazosin and Saphris.

On January 19, 2011, a consultative psychologist, Dan L. Boen, Ph.D., conducted a Mental Status Examination. His diagnostic impressions encompassed major depressive disorder and social phobia and a GAF score of 55.

On January 31, 2011, as a part of the "Psychiatric Review Technique", a DDB non-examining consultative psychologist, F. Kladder, Ph. D., diagnosed Plaintiff with major depressive disorder and social phobia and identified moderate limitations in activities of daily living, moderate limitations in maintaining social functioning, mild limitations in maintaining concentration, persistence and pace, and no episodes of decompensation. This same consultative psychologist also completed the Mental Residual Functional Capacity Assessment (MRFCA), which noted the following mental health functional deficits: moderate limitation in the ability to understand and remember detailed instructions; moderate limitation in the ability to carry out detailed instructions; moderate limitation in the ability to maintain attention and concentration for extended periods; moderate limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms; moderate limitation in the ability to

9

perform at a consistent pace without an unreasonable number and length of rest periods; and moderate limitation in the ability to accept instructions and respond appropriately to criticism from supervisors.

On April 5, 2012, the treating psychiatrist, Dr. Rutten, completed a mental residual functional capacity assessment and arrived at the following limitations: moderate limitation in the ability to remember locations and work-like procedures; moderate limitation in the ability to understand and remember detailed instructions; moderate limitation in the ability to carry out detailed instructions; moderate limitation in the ability to sustain an ordinary routine without special supervision; moderate limitation in the ability to work in coordination with or proximity to others without being distracted by them; moderate limitation in the ability to make simple work related decisions; moderate limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms; moderate limitation in the ability to perform at a consistent pace without an unreasonable number and length of rest periods; moderate limitation in the ability to interact appropriately with the general public; moderate limitation in the ability to ask simple questions or request assistance; moderate limitation in the ability to accept instruction and to respond appropriately to criticism from supervisors; moderate limitation in the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; moderate limitation in the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; moderate limitation in the ability to respond to changes in work setting; moderate limitation in the ability to be aware of normal hazards and take appropriate precautions; marked limitation in the ability to travel in unfamiliar places or use public transportation; and moderate limitation in the ability to set realistic goals or

make plans independent of others.

In 2013, Plaintiff's psychiatrist diagnosed PTSD, avoidant personality disorder, schizoaffective disorder, and pain disorder associated with psychological factors and general medical condition.

In support of reversal or remand Plaintiff first argues that the ALJ denied her due process by using a previously vacated ALJ decision as evidence. In particular, Plaintiff notes that the ALJ stated that "The judge noted at the first hearing that the claimant was able to relate and respond to all questions asked of her without any apparent issue" (Tr. 643). Pl. Br. 13. Plaintiff contends the ALJ did not note this at the first hearing, but noted it in the decision, and the ALJ erred in using the previous ALJ's finding as evidence because the decision was vacated.

The Defendant admits that the ALJ discussed the finding from the vacated decision in evaluation of Plaintiff's difficulties in social functioning at step three of the sequential evaluation process (Tr.643). The Defendant contends that the error is harmless because the ALJ adequately considered other evidence in evaluating Plaintiff's social functioning, including testimony during the second hearing.

Errors, if harmless, do not require or permit reversal. *Sanchez ex rel. Sanchez v. Barnhart*, 467 F.3d 1081, 1082–83 (7th Cir. 2006). An error is harmless if the court "can predict with great confidence that the result on remand would be the same." *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). In the present case, it is clear that the result would have been the same because the ALJ considered other evidence in the evaluation of Plaintiff's social functioning. For example, the ALJ considered that function reports noted that Plaintiff was always a loner, that she tended to isolate herself, and that she did not socialize often (Tr. 273-74, 643). She asserted

11

some difficulty in getting along with others in the past, but she reported that she got along well with her husband, mother, sister, and stepfather (Tr. 260, 264, 429, 643). She left her house twice per week at least and had daily visits with her husband (Tr. 260, 262-63, 643). She Skyped with her mother on the computer nearly every day, or they talked on the phone (Tr. 263, 643, 1066). She went to church once per week and was involved in worship studies (Tr. 263, 273, 643, 1066). She continued to work as a cashier at Kroger for two years after the alleged onset date (Tr. 427, 643, 671). At the second hearing, Plaintiff testified that she was uncomfortable in large groups of people, but that small groups did not bother her as much and that she was bothered by loud noises (Tr. 643, 670). She was home schooled and did not feel that she did well with other people (Tr. 643, 669). Clearly, the ALJ fully evaluated Plaintiff's social functioning. Moreover, this analysis was crystalized in the ALJ's RFC finding which recognized Plaintiff's limitations in social functioning and public interactions.

Plaintiff also argues that the ALJ erred in not assigning controlling weight to her treating psychiatrist's opinion. To be entitled to controlling weight, a treating physician's opinion must be "well-supported" by objective medical evidence and "not inconsistent" with other record evidence. 20 C.F.R. § 404.1527(c)(2); SSR 96-2p; Elder v. Astrue, 529 F.3d 408, 415 (7th Cir. 2008).

In the present case, the ALJ considered that Dr. Sylvia Rutten completed a medical source statement on April 5, 2012, wherein she opined that Plaintiff had only moderate restrictions in all areas of social functioning (Tr. 609, 643). The ALJ also found that Plaintiff had moderate difficulties in social functioning and, as noted above, included some social limitations in Plaintiff's RFC (Tr. 643, 646). The ALJ considered that Dr. Rutten opined that Plaintiff had a

moderate difficulty in the ability to carry out detailed instructions; the ability to sustain an ordinary routine without special supervision; the ability to work in coordination with or proximity to others without being distracted by them; the ability to make simple work-related decisions; and the ability to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 608-09, 644).

The ALJ also noted that Dr. Rutten opined that Plaintiff did not have any significant problem with carrying out very short and simple instructions; maintaining attention and concentration for extended periods; and the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances (Tr. 608-09, 644-45). The ALJ found that Dr. Rutten's opinion supports a finding of no more than moderate difficulty in maintaining concentration, persistence, or pace, and that these limitations were reflected in the RFC (Tr. 645). The ALJ found that Plaintiff had some moderate problems with sustaining concentration, persistence, or pace that have been addressed by limiting her to simple unskilled work and precluding more complex and detailed work activity (Tr. 649). The ALJ further noted that this is consistent with Dr. Rutten's opinion that Plaintiff's ability to perform simple tasks and to sustain attention was not limited, and other areas in particular social functioning had no more than moderate limitations (Tr. 608-10, 649). The ALJ considered that the only area with a marked limitation according to Dr. Rutten was an inability to travel to unfamiliar places, but that is such a minimal limitation and it is not a part of most jobs. (Tr. 610, 649).

Plaintiff argues that the ALJ mentioned Dr. Rutten's opinion, but did not find that it was entitled to controlling weight, and instead cherry picked limitations. This contention lacks merit

13

because the ALJ adequately evaluated the opinion from Dr. Rutten. As previously discussed, the ALJ noted that the limitations of simple unskilled work and the limitations on social functioning were consistent with Dr. Rutten's opinion. In addition, also as previously discussed, the ALJ noted that the only area with a marked limitation according to Dr. Rutten was an inability to travel to unfamiliar places, but that it was such a minimal limitation and was not a part of most jobs. The ALJ did not cherry pick limitations, but rather evaluated the limitations assessed by Dr. Rutten. Therefore, contrary to Plaintiff's contention, the ALJ adequately evaluated Dr. Rutten's opinion.

Plaintiff argues that the ALJ's RFC finding did not include Dr. Rutten's opinion that Plaintiff had a marked limitation in the ability to travel in unfamiliar places or use public transportation. However, as previously discussed, the ALJ adequately explained why this limitation was not included in the finding for the RFC, as the inability to travel is not a problem with most jobs, especially simple unskilled work..

Plaintiff argues that the ALJ's RFC finding did not include Dr. Rutten's opinion that Plaintiff had moderate limitations in the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, and to accept instruction and to respond appropriately to criticism from supervisors. However, this argument fails because the ALJ adequately considered these limitations. These limitations opined by Dr. Rutten are related to social functioning (Tr. 609). The ALJ discussed Dr. Rutten's opinion that Plaintiff has moderate restrictions in all areas of social functioning (Tr. 643). The ALJ found that Plaintiff had a moderate difficulty in social functioning, and found that she could relate on a superficial basis on an ongoing basis with coworkers and supervisors (Tr. 643, 646). The ALJ noted that the

limitations in the RFC are intended to reduce Plaintiff's anxiety as much as possible by limiting her social contacts (Tr. 649). Therefore, the ALJ accounted for the moderate restrictions in social functioning in the RFC finding. Furthermore, Plaintiff has not identified specific functional limitations that should have been included in the RFC based on the opinion from Dr. Rutten.

      Plaintiff further argues that the ALJ's RFC finding did not include Dr. Rutten's opinion that Plaintiff had moderate limitations in the ability to sustain an ordinary routine without special supervision; complete a normal workday and workweek without interruptions from psychologically based symptoms; and perform at a consistent pace without an unreasonable number and length of rest periods. Again, Plaintiff's argument fails because the ALJ adequately considered these limitations. These limitations opined by Dr. Rutten are related to concentration, persistence, or pace (Tr. 608-09). The ALJ discussed the opinion from Dr. Rutten and noted that the opinion supports a finding of no more than moderate difficulty in maintaining concentration, persistence or pace (Tr. 645). The ALJ found that Plaintiff could understand, remember, and carry out unskilled tasks, she could attend to tasks for a sufficient period of time to complete those tasks, and she could otherwise manage the stresses involved with unskilled work (Tr. 646). The ALJ noted that the limitations included in the finding for the RFC were intended to reduce Plaintiff's anxiety by limiting the complexity of the work itself (Tr. 649). Therefore, the ALJ accounted for the moderate restrictions in concentration, persistence, or pace in the RFC finding. Furthermore, Plaintiff has not identified specific functional limitations that should have been included in the RFC based on the opinion from Dr. Rutten.

      Plaintiff argues that Dr. Rutten's opinion that she is moderately limited in the ability to accept instruction and to respond appropriately to criticism from supervisors and that she is

moderately limited in the ability to sustain an ordinary routine without special supervision necessitate a disability finding. Plaintiff further argues that an employee cannot both be left alone and specially supervised, but this is what Plaintiff requires. However, the record shows that Dr. Rutten only indicated that Plaintiff has moderate difficulty in these areas, and did not preclude Plaintiff entirely (Tr. 608-09). Furthermore, the ALJ accounted for Plaintiff's difficulties with supervision by finding that she could relate on a superficial basis on an ongoing basis with supervisors (Tr. 646). This limitation adequately accounts for Plaintiff's difficulties in interacting with supervisors.

Next, Plaintiff claims that the ALJ did not properly evaluate her obesity. Social Security Ruling (SSR) 02-1p, 2002 WL 34686281, provides guidance on how to evaluate obesity in disability claims at each step of the sequential evaluation process. SSR 02-1p advises the ALJ to evaluate various factors in assessing the RFC including possible exertional functions that may be affected by obesity, as well as the possible combined effects of obesity with other impairments. *Id*. at *6.

In the present case, the ALJ found that Plaintiff's obesity was a severe impairment at step two, and at step three, evaluated the potential impact her obesity may have on other body systems, including the musculoskeletal system (Tr. 640-41). The ALJ considered that Plaintiff was obese with a body mass index of about forty most of the time since the alleged onset date (Tr. 591, 641). She was five feet, seven inches tall and weighed at least 265 pounds since the alleged onset date (Tr. 526, 641). In evaluating the effects of Plaintiff's obesity on her RFC, the ALJ cited to Plaintiff's testimony, treatment notes and consultative examinations (Tr. 647-48). The ALJ conducted a thorough review of the evidence to support the RFC finding for light work with

16

sitting, standing, and/or walking four hours each in an eight-hour workday, occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, no climbing ladders, ropes, or scaffolds, and no concentrated exposure to unprotected heights and dangerous moving machinery (Tr. 646).

Specifically, the ALJ considered Plaintiff's testimony that she still took care of her house, did laundry, tried to walk thirty minutes per day for exercise or ride an exercise bike, and went up and down stairs a few times every day (Tr. 647, 674-75, 681-82). The ALJ also considered that Plaintiff's weight ranged from 259 pounds to 280 pounds (Tr. 334, 393, 403, 423, 526, 591, 647). The ALJ considered that the combined effects of Plaintiff's impairments, including obesity, limited her to less than the full range of light exertion, but she could still lift and carry up to twenty pounds occasionally and ten pounds frequently and make occasional postural movements (Tr. 647). The ALJ considered that the consultative examination from Dr. Gautham Gadiraju showed some decrease in range of motion of the lumbar back and obesity, but otherwise showed normal motor strength, sensation, reflexes, and a normal gait (Tr. 433, 647). There was full range of motion of the cervical spine, her grip strength was normal, she was able to pick up coins and buttons, and there was no numbness or tingling (Tr. 423, 647).

The ALJ found that Plaintiff could sit, stand and/or walk four hours each per workday in light of an EMG of the lower extremities that showed, chronic right L5 radiculopathy, the evidence of plantar fascial disease, and increasing obesity (Tr. 648, 1135-36, 1138-39, 1150-51, 1213). The ALJ considered the opinion from Dr. Robert Shugart that Plaintiff could return to her regular work (Tr. 345, 648). The ALJ gave this opinion partial weight and noted that Plaintiff gained weight and developed knee pain and plantar fasciitis after the opinion was given (Tr.648).

17

The ALJ noted that the additional conditions further reduced the length of time Plaintiff could reasonably be expected to stand and/or walk to a total of four hours each per day (Tr. 648). Plaintiff argues that the ALJ's obesity analysis is inadequate and cannot be meaningfully reviewed. However, as previously discussed, the ALJ adequately evaluated Plaintiff's obesity in accordance with SSR 02-1p, and included limitations in the RFC that were supported by the evidence. Accordingly, this court finds that the ALJ adequately accounted for Plaintiff's obesity in the RFC finding, citing to substantial evidence in the record to support the assessed limitations.

Next, Plaintiff argues that the ALJ failed to properly evaluate her RFC. Plaintiff argues that the ALJ's sit/stand/walk limitation is defective because the limitation implies that sitting, standing, and walking could occur simultaneously or in random sequence. Plaintiff also argues that the ALJ's sit/stand option does not enumerate the frequency of position changes. Contrary to Plaintiff's assertions, the ALJ's finding for Plaintiff's RFC does not include a specific sit/stand option (Tr. 646). The RFC is the maximum that a Plaintiff can still do despite her limitations. 20 C.F.R. § 404.1545(a)(3), *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir 2008). The ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except that she could sit, stand and/or walk four hours each in an eight-hour workday (Tr. 646). The ALJ did not find a sit/stand option, but found that Plaintiff was capable of standing for four hours, sitting for four hours, and walking for four hours total in an eight-hour workday (Tr. 646). The ALJ simply identified the maximum amount of time Plaintiff was capable of performing each activity in an eight-hour workday. The ALJ did need to enumerate position changes because the RFC indicated that Plaintiff was capable of performing a job where some sitting was allowed. Plaintiff's argument that the limitation implies that sitting, standing, and walking could occur

18

simultaneously or in random sequence is similarly without merit. The ALJ identified the maximum amount of each activity that Plaintiff was capable of performing, and it would be physically impossible to stand and walk at the same time. There is no indication that the ALJ intended to find Plaintiff capable of sitting, standing, and walking simultaneously.

Additionally, the VE fully understood the parameters of the RFC the ALJ contemplated. In response to a hypothetical question posed by the ALJ that was identical to the ALJ's finding for the RFC, the VE testified that there would still be thousands of unskilled light jobs available that a person could perform (Tr. 646, 716-19). The VE testified that light jobs are traditionally performed primarily standing or walking throughout the workday (Tr. 718). The VE further testified that the hypothetical suggests that the person had to sit for some duration of the workday, and the three jobs could accommodate that (Tr. 718-19). *See Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003) (the hypothetical question need only contain a description of limitations supported by the medical record); *Ehrhart v. Sec'y of Health and Human Servs.*, 969 F.2d 534, 540-41 (7th Cir. 1992) (vocational expert testimony constitutes substantial evidence for finding as to what jobs a claimant can perform with her particular limitations). Thus, this court holds that substantial evidence supports the ALJ's RFC finding.

Accordingly, for all the above reasons, the ALJ's decision will be affirmed.

<u>Conclusion</u>

On the basis of the foregoing, the decision of the ALJ is hereby AFFIRMED.

Entered: June 16, 2017.

                                                s/ William C. Lee
                                                William C. Lee, Judge
                                                United States District Court